FILED

UNITED STATES DISTRICT COURT FOR THE JUL - 1 AM 10: 26
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CLERK, U.S. DISTRICT COURT
OCALA, FLORIDA

THEODORE A. CONNELLY, Individually
and as Personal Representative of the
ESTATE OF JOANN CONNELLY,

Plaintiff,

v.

Civil Action No.

5:09-CV-292-OC-10G.RJ

WAL-MART STORES, INC., ACTAVIS
TOTOWA, LLC; ACTAVIS ELIZABETH,
LLC; ACTAVIS, INC. (a/k/a ACTAVIS US);
MYLAN,        INC.;        MYLAN
PHARMACEUTICALS, INC.; and MYLAN
BERTEK PHARMACEUTICALS, INC.,

Defendants.

/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, THEODORE A. CONNELLY, Individually and as Personal

Representative of the ESTATE OF JOANN CONNELLY, by and through the

undersigned attorneys, sues Defendants, WAL-MART STORES, INC. ("WAL-

MART"), ACTAVIS TOTOWA, LLC; ACTAVIS ELIZABETH, LLC; ACTAVIS, INC.

(a/k/a ACTAVIS US) (collectively "ACTAVIS"); MYLAN, INC.; MYLAN

PHARMACEUTICALS, INC.; and MYLAN BERTEK PHARMACEUTICALS, INC.

(collectively "MYLAN"), and alleges:

### Nature of Case

1.      This is a Florida diversity, wrongful death and products liability case

arising out of the death of JoAnn Connelly ("JoAnn Connelly") on or about July 6,

2007, in Ocala, Marion County, Florida. At the time of her death, JoAnn Connelly was taking the drug, digoxin, for treatment of a heart condition. Defendant, ACTAVIS designed, research, manufactured, tested, sought approval by the United States Food and Drug Administration (hereinafter "FDA") and advertised, promoted, marketed, sold and/or distributed Digitek® (Digoxin) through Defendant MYLAN under the "Bertek" label for the treatment of heart problems including heart failure and abnormal heart rhythms. Defendant, WAL-MART, sold digoxin from its pharmacies located in its chain of retail stores.

2.    As a result of the negligence of ACTAVIS, and the defective nature of Digitek® (Digoxin), the drug contained twice the approved level of active ingredient than appropriate.

3.    As a result of the defective nature of Digitek® (Digoxin), the drug increases the risk of digitalis toxicity.

4.    Digitalis toxicity can cause nausea, vomiting, dizziness, low blood pressure, cardiac instability, bradycardia, and in some cases such as JoAnn Connelly's, even death.

5.    At all times relevant hereto, ACTAVIS, MYLAN and WAL-MART (collectively hereinafter "Defendants") misrepresented the safety of Digitek® (Digoxin) and negligently designed, manufactured, marketed, advertised, promoted, sold and/or distributed Digitek® (Digoxin) as a safe and effective medication to treat heart problems including heart failure and abnormal heart rhythms.

6.     At all times relevant hereto, Defendants failed to warn of the dangers of Digitek® (Digoxin) including, but not limited to, the fact that Digitek® (Digoxin) contained twice the approved level of active ingredient than is appropriate.

7.     At all times relevant hereto, Defendants knew, had reason to know, or should have known, that its representations that Digitek® (Digoxin) was safe and effective were materially false and misleading.

8.     Consequently, Plaintiff seeks relief individually and on behalf of the Estate of JoAnn Connelly as a result of JoAnn Connelly's use of Digitek® (Digoxin) and resulting death.  Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter "F.R.C.P.") to recover compensatory, actual and punitive damages and attorneys' fees.

9.     Plaintiff, THEODORE A. CONNELLY, has been appointed Personal Representative of the ESTATE OF JOANN CONNELLY, per court Order dated April 14, 2009.

### Jurisdiction and Venue

10.     Jurisdiction is based on diversity of citizenship.  28 U.S.C. §1332. The amount in controversy is substantially in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

11.     At all times relevant hereto, Defendant ACTAVIS was engaged in the business of manufacturing, marketing, promoting, selling and/or distributing Digitek® (Digoxin).

12.     At all times relevant hereto, Defendants MYLAN and WAL-MART were engaged in the business of marketing, promoting, selling and/or distributing Digitek® (Digoxin).

13.     Defendants placed defective Digitek® (Digoxin) into the stream of interstate commerce, including Florida.

14.     Defendants' placement of defective Digitek® (Digoxin) into the stream of commerce resulted in the death of JoAnn Connelly.

15.     Upon information and belief, at all times relevant hereto, Defendants were present and doing business in the State of Florida and in the Middle District of Florida.

16.     At all relevant times, Defendants transacted, solicited and conducted business in the State of Florida and derived substantial revenue from such business.

17.     At all relevant times, Defendants expected or should have expected that their acts would have consequences within the Middle District of Florida. Therefore, venue is permissible in this District pursuant to U.S.C. §1391.

### Parties

18.     Plaintiff, THEODORE A. CONNELLY, is the husband of JoAnn Connelly and personal representative of JoAnn Connelly's estate.  At all relevant times, and more specifically the time of her death, JoAnn Connelly was a resident of the State of Florida.  Plaintiff, THEODORE A. CONNELLY, is also a

resident of the State of Florida and a proper party to assert this claim under the Florida Wrongful Death Act.

19.     Defendant ACTAVIS is a foreign corporation with its headquarters in Totowa, New Jersey and facilities in New Jersey, Maryland and North Carolina.

20.     Defendant MYLAN is a foreign corporation with its headquarters in Pittsburg, Pennsylvania.

21.     Defendant WAL-MART is a foreign corporation with its headquarters in Bentonville, Arkansas.

22.     Defendants ACTAVIS, MYLAN and WAL-MART all conduct business throughout the State of Florida and are, thus, amenable to jurisdiction in this state.

## Facts

23.     In approximately July 18, 2006 JoAnn Connelly was prescribed and began taking the prescription medication Digitek® (Digoxin) on a daily basis for a diagnosed heart condition.

24.     The prescription for Digitek® (Digoxin) was last filled on June 14, 2007 shortly after which JoAnn Connelly continued to have heart problems and began to experience nausea, vomiting, dizziness, low blood pressure, cardiac instability and bradycardia which lead to her death on July 6, 2007.

25.     On April 25, 2008, the FDA announced that ACTAVIS was recalling all lots of Digitek® (Digoxin) due to the possibility that tablets of double the appropriate thickness may have been commercially released.

26.     Upon information and belief, the FDA and ACTAVIS received eleven (11) complaints about side effects from Digitek® (Digoxin) since 2006. At the time of the recall, neither the FDA nor ACTAVIS had knowledge of how long the defective pills were sold.

27.     Defendants negligently designed, manufactured, marketed, advertised, promoted, sold and/or distributed Digitek® (Digoxin) which was unreasonably dangerous in normal use in that the defective drug had twice the approved level of active ingredient than is appropriate.

28.     It was not until sometime after, approximately May, 2008, that Plaintiff received any form of notification that the Digitek® (Digoxin) JoAnn Connelly had taken was defective and could pose a risk to her health and even cause death. (See attached Exhibit "A")  By the time JoAnn Connelly received the notification she had been taking the defective Digitek® (Digoxin), JoAnn Connelly had died.

29.     Defendants failed to adequately warn JoAnn Connelly of the defective drug and of its unreasonably dangerous characteristics.

30.     Defendants owed a duty to JoAnn Connelly to manufacture and sell Digitek® (Digoxin) without hidden and concealed defects.

31.     Defendants breached such duty which proximately caused JoAnn Connelly's death and caused Theodore A. Connelly and her estate to suffer damages.

32.     Defendants knew or, in the exercise of reasonable care, should have known that its drug was defective and that JoAnn Connelly might have reasonably been expected to use the drug and be affected by its defective condition.

33.     This defective condition was a direct and proximate cause of JoAnn Connelly's death.

### FIRST CAUSE OF ACTION AS AGAINST DEFENDANTS
### (ACTAVIS, MYLAN & WAL-MART)
### NEGLIGENCE AND NEGLIGENCE PER SE

34.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

35.     Defendants had a duty to exercise reasonable care in manufacturing, marketing, supplying, promoting, packaging, selling and/or distributing Digitek® (Digoxin) into the stream of commerce, including a duty to assure that the product would work as intended, marketed, promoted and/or advertised and/or did not cause users to suffer unreasonable, dangerous side effects.

36.     Defendants failed to exercise ordinary care in the manufacturing, marketing, supplying, promoting, packaging, sale, testing, advertising, warning, quality assurance, quality control and/or distribution of Digitek® (Digoxin) into the

stream of commerce in that Defendants knew or should have known that the product was defective, did not function as intended and/or created a high risk of unreasonable, dangerous side effects, including, but not limited to, nausea, vomiting, dizziness, low blood pressure, cardiac instability, bradycardia and death, as well as other severe and permanent health consequences.

37.    Defendants under-reported, underestimated and/or downplayed the serious dangers and the defective nature of Digitek® (Digoxin).

38.    Upon information and belief, despite the fact that Defendants knew or should have known that Digitek® (Digoxin) caused unreasonably dangerous side effects due to its manufacturing defect, Defendants continued to market, manufacture, distribute and/or sell Digitek® (Digoxin) to consumers, including JoAnn Connelly.

39.    Defendants knew or should have known that consumers such as JoAnn Connelly would foreseeably suffer injury, both physical and economic, and/or be at an increased risk of suffering injury as a result of Defendants' failure to exercise ordinary care, as well as Defendants' negligent manufacturing process, as set forth above.

40.    Defendants' actions and/or inactions, as set forth herein, by virtue of violating statutes, ordinances and/or rules and/or regulations constitute negligence per se.

WHEREFORE, Plaintiff, THEODORE A. CONNELLY, Individually and as Personal Representative of the ESTATE OF JOANN CONNELLY, respectfully

requests damages against Defendants, ACTAVIS, MYLAN and WAL-MART, and any other relief this Court deems just and proper.

## SECOND CAUSE OF ACTION AGAINST DEFENDANTS
### (ACTAVIS, MYLAN AND WAL-MART)
### BREACH OF EXPRESS WARRANTY

41.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

42.   Defendants expressly warranted that Digitek® (Digoxin) was safe and well accepted by users.

43.   Digitek® (Digoxin) did not conform to the express representations referred to above because the drug was not safe and it was associated with numerous side effects not accurately identified by Defendants.  As a direct and proximate result of the breach of said warranties, JoAnn Connelly died.

44.   JoAnn Connelly did rely on the express warranties of the Defendants herein.

45.   Members of the medical community, including physicians and/or other healthcare professionals, relied upon the representations and warranties of the Defendants in recommending and/or prescribing Digitek® (Digoxin).

46.   Defendants breached the aforesaid express warranties, as Digitek® (Digoxin) was defective.

47.   Defendants expressly represented to JoAnn Connelly, her physicians, healthcare providers and/or the FDA that Digitek® (Digoxin) was safe, efficacious and fit for use for the purposes intended, that the prescription drug

was of merchantable quality, that Digitek® (Digoxin) did not produce any dangerous side effects in excess of those risks associated with other non-defective drugs of the same class, that side effects the prescription drug did produce were accurately reflected in the warnings and that Digitek® (Digoxin) was adequately tested and fit for its intended use.

48.    Defendants knew or should have known that the aforesaid representations and warranties were false, misleading and untrue in that Digitek® (Digoxin) was negligently manufactured.

49.    By reason of the foregoing, JoAnn Connelly did suffer serious and dangerous side effects, including death.

WHEREFORE, Plaintiff, THEODORE A. CONNELLY, Individually and as Personal Representative of the ESTATE OF JOANN CONNELLY, respectfully requests damages against Defendants, ACTAVIS, MYLAN and WAL-MART, and any other relief this Court deems just and proper.

## THIRD CAUSE OF ACTION AGAINST DEFENDANTS (ACTAVIS, MYLAN AND WAL-MART) BREACH OF IMPLIED WARRANTY

50.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

51.    At all times herein, Defendants manufactured, compounded, portrayed, distributed, recommended, merchandised, advertised, promoted and sold Digitek® (Digoxin) for the treatment of heart problems including heart failure and abnormal heart rhythms.

52.     At all times Defendants marketed, sold, and distributed Digitek®
(Digoxin) for use by JoAnn Connelly, Defendants knew of the use for which
Digitek® (Digoxin) was intended and impliedly warranted the product to be of
merchantable quality and safe and fit for such use.

53.     Defendant impliedly represented and warranted to JoAnn Connelly,
her physicians, healthcare providers, and/or the FDA that Digitek® (Digoxin) was
safe and of merchantable quality and fit for the ordinary use for which it was to be
used.

54.     Aforementioned representations and warranties were false,
misleading and inaccurate in that Digitek® (Digoxin) was unsafe, unreasonable
dangerous, improper, not merchantable quality and defective.

55.     JoAnn Connelly, her physicians and healthcare providers relied on
said implied warranty of merchantability of fitness for a particular use and
purpose.

56.     JoAnn Connelly, her physicians and healthcare providers
reasonably relied upon the skill and judgment of Defendants as to whether
Digitek® (Digoxin) was of merchantable quality and safe and fit for its intended
use.

57.     Defendants herein breached the aforesaid implied warranties, as
Digitek® (Digoxin) was not fit for its intended purposes and uses.

58.     By reason of the foregoing, JoAnn Connelly did suffer serious side
effects, including death after taking Digitek® (Digoxin).

WHEREFORE, Plaintiff, THEODORE A. CONNELLY, Individually as Personal Representative of the ESTATE OF JOANN CONNELLY, respectfully requests damages against Defendants, ACTAVIS, MYLAN and WAL-MART, and any other relief this Court deems just and proper.

## FOURTH CAUSE OF ACTION AGAINST ACTAVIS & MYLAN
## STRICT LIABILITY

59.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 33 as though fully set forth herein.

60.     At all times herein mentioned, ACTAVIS and MYLAN designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed Digitek® (Digoxin) used by JoAnn Connelly.

61.     Digitek® (Digoxin) was expected to, and did, reach the usual consumers, including JoAnn Connelly, handlers and persons coming in contact with said product without substantial change in the condition which it was produced, manufactured, sold, distributed and marketed by ACTAVIS and MYLAN.

62.     At all times herein mentioned, Digitek® (Digoxin) was in a defective condition and unsafe, and ACTAVIS and MYLAN knew, had reason to know, or should have known that said product was defective and unsafe, especially when used in the form and manner as provided.

63.     ACTAVIS and MYLAN had a duty to create a product that was not unreasonably dangerous for its normal intended use.

64.   ACTAVIS and MYLAN designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed a defective product which created an unreasonable risk to the health of consumers, including JoAnn Connelly.  ACTAVIS and MYLAN are, therefore, strictly liable for the injuries sustained by JoAnn Connelly which led to her death.

65.   ACTAVIS and MYLAN failed to provide adequate warnings or instructions as Defendants knew or should have known that Digitek® (Digoxin) created a risk of serious and dangerous side effects including, but not limited to, nausea, vomiting, dizziness, low blood pressure, cardiac instability, bradycardia and death, as well as other severe and permanent health consequences.

66.   ACTAVIS's and MYLAN's defective design, manufacturing defect and inadequate warnings of the dangers associated with Digitek® (Digoxin) were acts that amount to willful, wanton and/or reckless conduct.

67.   As a direct and proximate result of the defective condition of Digitek® (Digoxin) as manufactured and sold by ACTAVIS and MYLAN, JoAnn Connelly died.

WHEREFORE, Plaintiff, THEODORE A. CONNELLY, Individually and as Personal Representative of the ESTATE OF JOANN CONNELLY, respectfully requests damages against Defendants, ACTAVIS and MYLAN, and any other relief this Court deems just and proper.

## DAMAGES

70.     Plaintiff re-alleges and incorporates by reference all other paragraphs of this Complaint as though fully set forth herein.

71.     As a direct and proximate result of the negligence, carelessness, recklessness, willful, intentional, deliberate and/or malicious acts of Defendants, individually and collectively, both jointly and severally, JoAnn Connelly suffered nausea, vomiting, dizziness, low blood pressure, cardiac instability, bradycardia, and death.

73.     The Estate of JoAnn Connelly has incurred medical and/or funeral expenses due her injury and death.

72.     Plaintiff, Theodore A. Connelly, has suffered the loss of his wife's support and services, the loss of his wife's companionship and protection and mental pain and suffering as a result of the death of his wife.

WHEREFORE, Plaintiff, THEODORE A. CONNELLY, Individually and as Personal Representative of the ESTATE OF JOANN CONNELLY, respectfully requests damages against Defendants, ACTAVIS and MYLAN, and any other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff further demands a trial by jury on all issues so triable against the Defendants, WAL-MART STORES, INC., ACTAVIS TOTOWA, LLC; ACTAVIS ELIZABETH, LLC; ACTAVIS, INC. (a/k/a ACTAVIS US); MYLAN, INC.; MYLAN PHARMACEUTICALS, INC.; and MYLAN BERTEK PHARMACEUTICALS, INC.,

DATED this ____ day of ____, 2009.

**THE CANNON LAW FIRM, P.A.**

**Craig J. Cannon, Esq.**
Florida Bar No. 0932360
1274 E. Silver Springs Boulevard (34470)
Post Office Box 1986
Ocala, FL 34478-1986
(352) 369-0529 telephone
(352) 369-9304 facsimile
E-mail: cjc@thecannonlawfirm.com
Attorney for Theodore A. Connelly Individually
and as Personal Representative of the Estate
of JoAnn Connelly

# EXHIBIT A

# WAL★MART

## Pharmacy

702 SW 8th St.
Bentonville. AR 72712

|||||||||||||||||||||||||                    <u>1126171</u>                          May 2008

Joann Connelly                               w30673   P25840
6809 NW 60th St
Ocala. FL 34482-8462

Dear Joann Connelly:

**Re: Urgent Drug Recall**

We are writing to inform you that Actavis Totowa LLC, a United States manufacturing division of the
international generic pharmaceutical company Actavis Group, is initiating a nationwide recall of
Digitek® (digoxin tablets, USP, all strengths) for oral use. The products are distributed by Mylan
Pharmaceuticals Inc., under a "Bertek" label and by UDL Laboratories, Inc. under a "UDL" label.

The voluntary recall is due to the possibility that tablets with double the appropriate thickness may have
been commercially released. These tablets may contain twice the approved level of active ingredient than
is appropriate.

Digitek is used to treat heart failure and abnormal heart rhythms. The existence of double strength tablets
poses a risk of digitalis toxicity in patients with renal failure. Digitalis toxicity can cause nausea,
vomiting, dizziness, low blood pressure, cardiac instability and bradycardia. Death can also result from
excessive digitalis intake. Several reports of illnesses and injuries have been received.

Actavis manufactures the products for Mylan and the products are distributed by Mylan and UDL under
the Bertek and UDL labels. Bertek and UDL are affiliates of Mylan.

Our records indicate that you are currently, or have in the past, taken this medication. **If you are
currently taking Digitek 0.125mg or 0.25mg tablets, or have a supply on hand, you should contact
Stericycle customer service at 1-888-276-6166. Representatives will be available Monday through
Friday, 8 am to 5 pm EST. Additional information about the voluntary recall can also be found at
www.actavis.us.**

This recall is being conducted with the knowledge of the Food and Drug Administration.

Thank you for choosing Wal-Mart Pharmacy.

Sincerely,
Your Local Wal-Mart Pharmacist
2600 SW 19th Ave
Ocala, FL 34474
(352) 237-7103

WM_0000_01.LDE P01 MK30673